UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN PATRICK WOODS,

           Plaintiff,

- against -

KENNETH A. PETTINE,

           Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/27/2014

**MEMORANDUM**
**OPINION & ORDER**

13 Civ. 290 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this diversity action, pro se Plaintiff Brian Patrick Woods claims that Dr. Kenneth A. Pettine, a Colorado orthopedic surgeon, breached certain alleged "consultant agreements" to pay Woods compensation for referring professional athletes to Pettine's Colorado-based medical practice. (Cmplt. (Dkt. No. 1))

      Pettine has moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for judgment on the pleadings under Rule 12(c). (Def. Mot. (Dkt. No. 19)) Because this Court lacks personal jurisdiction over Pettine, the motion to dismiss will be GRANTED.

## BACKGROUND

      "Because a motion to dismiss for lack of personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings[,] . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" CMNY Capital, L.P. v. Perry, 97 CIV. 6172 (MBM), 1998 WL 132846, at *1 (S.D.N.Y. Mar. 23, 1998) (quoting Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)). "Accordingly, the following facts are drawn from the complaint, affidavits, and documentary

exhibits submitted by the parties, and are construed in the light most favorable to plaintiff, the non-movant." Id. (citing Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

The Complaint alleges that Woods entered into a "consultant agreement" with Pettine on April 19, 2012 (the "First Agreement"). (Cmplt. (Dkt. No. 1) ¶ 9; see also Dvorkin Decl. (Dkt. No. 20), Ex. C)  Under the agreement, Pettine – who owns and operates a Colorado-based medical practice known as Orthopedic Stem Cell Institute ("OSCI") – agreed to pay Woods a 45% commission when he referred a professional athlete to Pettine, and that athlete underwent adult stem cell treatment at OSCI. (Dvorkin Decl. (Dkt. No. 20), Ex. C)  The commission was based on the "total price paid [to Pettine]" for each stem cell procedure an athlete received. (Id. ¶ 5)  The First Agreement also obligated Pettine to pay Woods a monthly $10,000 draw against future commissions, but that obligation did not begin until sixty days after the First Agreement was executed, and was suspended if Woods did not refer an athlete to Pettine for stem cell treatment within sixty days. (Id.)

Near the end of the First Agreement's initial sixty-day period, Woods claims that Pettine induced him to leave his position with the New York Jets by promising him full-time employment with a base salary and additional job responsibilities, including "overseeing sports marketing efforts for [] OSCI" and "procuring partnerships with [] professional sports organizations and their respective labor unions, the majority of which are based in New York City." (Cmplt. (Dkt. No. 1) ¶¶ 15-21)  Woods claims that he and Pettine then entered into a second consultant agreement (the "Second Agreement"), which provides that Woods will receive a base salary.[1]  (Id. ¶ 18; see also Dvorkin Decl. (Dkt. No. 20), Ex. D)  While Woods

---

[1] Woods does not allege what salary he was to be paid under the Second Agreement, but the unexecuted version submitted to the Court provides for an annual salary of $150,000. (Dvorkin Decl. (Dkt. No. 20), Ex. D, ¶ 5)

2

acknowledges that Pettine never signed the Second Agreement, he contends that such a contract exists in fact and that he fulfilled his obligations under this alleged agreement. (Id. ¶ 23) Woods further alleges that Pettine breached his obligations under the Second Agreement by making only sporadic payments to Woods.[2] (Id. ¶¶ 22-24)

Woods filed this action on January 14, 2013, and served Pettine with a summons and complaint at his home in Fort Collins, Colorado, on the same day. (Aff. of Service (Dkt. No. 4)). The Complaint alleges claims for (1) breach of contract, (2) promissory estoppel, (3) unjust enrichment, (4) quantum meruit and (5) breach of contract implied-in-fact. (Cmplt. (Dkt. No. 1) at 9-10)

During an April 26, 2013 conference concerning Defendant's proposed motion to dismiss for lack of personal jurisdiction, the Court offered Plaintiff an opportunity to conduct jurisdictional discovery, noting that it typically provides for a thirty-day period for such discovery in connection with a proposed motion to dismiss. (Apr. 26, 2013 Hearing Transcript at 7) Woods stated that he required only fourteen days for jurisdictional discovery. (Id.) Accordingly, the Court issued an order providing for jurisdictional discovery from April 26, 2013 to May 10, 2013. (Dkt. No. 12) Woods, however, conducted no jurisdictional discovery. (Dvorkin Decl. (Dkt. No. 20) ¶ 9)

Pettine filed his motion to dismiss on May 17, 2013, alleging that this Court lacks personal jurisdiction over him. (Def. Mot. (Dkt. No. 19)) In support of his motion, Pettine has submitted an affidavit stating that

> (1) he resides in Fort Collins, Colorado, is licensed to practice medicine in Colorado and Wyoming, and maintains medical offices in Johnstown and Loveland, Colorado;

---

[2] Woods alleges that a non-party to this litigation – Spinesmith Holdings LLC, an Austin, Texas-based medical device company – made these payments on Pettine's behalf or at his direction. (Id. ¶¶ 19, 33, 34, 36)

3

    (2)  he has never been licensed to practice medicine in New York, has never maintained an office or residence in the state of New York, does not own or use any real property in New York, does not maintain a mailing address or a bank account in New York, does not derive any revenue from New York, and has not transacted business in New York or engaged in any "persistent course of conduct" in New York.

(Pettine Aff. (Dkt. No. 20) ¶¶ 1-3, 5-9)

        Pettine acknowledges entering into the First Agreement with Woods after meeting him in March 2012 in Indianapolis, Indiana, at the "NFL Combine" – a scouting event for college football players interested in turning pro. (Id. ¶¶ 10-11) As to the Second Agreement, Pettine states that he neither signed it nor consented to its terms. (Id. ¶ 21) He further contends that Woods has never referred any patients to his medical practice. (Id. ¶ 24) Finally, Pettine notes that both the First Agreement and the unexecuted Second Agreement contain mandatory arbitration clauses and choice of law provisions requiring that all disputes arising under the agreements be resolved in accordance with Colorado law. (Id. ¶¶ 15-16, 23)

        Woods argues, however, that this Court may exercise personal jurisdiction over Pettine under (1) New York Civil Practice Law and Rules ("CPLR") Section 301, because Pettine is "doing business" in New York; and (2) CPLR § 302(a)(1), because Woods's injuries are fairly traceable to business that Pettine "transact[ed] within th[is] state." (Pltf. Opp. Br. (Dkt. No. 25) at 1-7)

        In addition to the meeting in Indianapolis, the Complaint alleges that Woods traveled to Austin, Texas, Washington, D.C. and Colorado to discuss his work with Dr. Pettine. See Cmplt. (Dkt. No. 1) ¶¶ 20, 25, 30. Woods does not allege that he had any meetings or conducted any negotiations with Pettine in New York. Indeed, the Complaint contains only two references to New York: (1) that under the Second Agreement Woods was to "oversee[] sports marketing efforts for Dr. Pettine's Company, OSCI, [by] procuring partnerships with the

4

professional sports organizations and their respective labor unions, the majority of which are based in New York City"; and (2) after the Second Agreement was entered into, Woods "relocated to New York City full-time in order to enhance his marketing capabilities for Dr. Pettine . . . ." (Id. ¶¶ 21, 27)

In his opposition papers, Woods contends that (1) he has promoted "the interests of both the Defendant and Defendant's company in New York"; (2) he maintained a home office in New York; (3) Pettine has paid for Woods to maintain a phone listing in New York; (4) Pettine and OSCI have "engaged in several transactions with New York based companies, including the development of a commercial for national broadcast and a public relations effort to promote the national expansion of Defendant's company; and (5) through his partnership with Spinesmith Holdings, LLC, Pettine "derives income from the sales of medical devices throughout the State of New York." (Pltf. Opp. Br. (Dkt. No. 25) at 5)

## DISCUSSION

### I. THE COURT LACKS PERSONAL JURISDICTION OVER PETTINE

#### A. Legal Standard

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)). "In deciding [such a motion,] a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); accord Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).

5

A plaintiff's burden to demonstrate jurisdiction "varies depending on the procedural posture of the litigation." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Prior to discovery, a Rule 12(b)(2) motion to dismiss will fail where plaintiff has "[pled] in good faith legally sufficient allegations of jurisdiction." Id. (internal citation omitted). However, where – as here – "there has been [an opportunity to conduct] discovery on the issue of [personal] jurisdiction, the plaintiff's prima facie showing must include 'an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.' The plaintiff cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'" Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (quoting Ball, 902 F.2d at 197) (internal citations omitted); accord Morrison v. N.Y. State Div. for Youth Children & Family Servs., No. 98 Civ. 643, 2000 WL 532762, at *1 (S.D.N.Y. Apr. 25, 2000). In considering whether a plaintiff has met his burden, courts "'will not draw "argumentative inferences" in the plaintiff's favor . . . .'" Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Robinson, 21 F.3d at 507). Nor will they "'accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir.1998)).

Before a federal court sitting in diversity exercises personal jurisdiction over a defendant, two requirements must be satisfied. First, the defendant must be "amenable to process under the law of the forum state." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco P.L.C., 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105 (1987); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). Second, the exercise of jurisdiction must comport with due

6

process principles. Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). "Where, as here, the plaintiff[] premise[s] [a] theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause." Licci, 673 F.3d at 61.

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984)). New York law provides for both general and specific jurisdiction. CPLR §§ 301, 302.

Under CPLR § 301, the general jurisdiction provision, a non-resident is subject to suit in New York if he is "'engaged in such a continuous and systematic course of "doing business" [in the state] as to warrant a finding of its "presence" in this jurisdiction.'" Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (alteration added) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (N.Y. 1981)) (quoting Simonson v. Int'l Bank, 14 N.Y.2d 281, 285 (N.Y. 1964)). To be "present," a defendant must do business in New York "'not occasionally or casually, but with a fair measure of permanence and continuity.'" Moore v. Publicis Groupe SA, 11 CIV. 1279 ALC AJP, 2012 WL 6082454, at * 5 (S.D.N.Y. Dec. 3, 2012) (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)).

CPLR § 302 permits the exercise of specific jurisdiction over any non-domiciliary who personally or through an agent "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." CPLR §§ 302(a)(1). "[I]n determining

7

whether personal jurisdiction may be exercised under section 302(a)(1), 'a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether th[e] cause of action "aris[es] from" such a business transaction.'" Licci, 673 F.3d at 60 (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007).

**B.   Analysis**

    **1.   General Jurisdiction**

Woods has not proffered sufficient facts to demonstrate that Pettine engaged in such a continuous and systematic course of business in New York as to justify this Court's exercise of general jurisdiction over him. At best, the materials before the Court suggest that Pettine hired Woods to solicit patients in New York (and elsewhere) for Pettine's Colorado-based medical practice. However, "solicitation of business in New York will not suffice to justify a finding of general jurisdiction in New York unless it is 'substantial and continuous' <u>and</u> the 'defendant engages in other activities of substance in the state.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 12 CIV. 8435 AJN, 2013 WL 4647194, at *4 (S.D.N.Y. Aug. 29, 2013) (emphasis in original) (quoting Landoil Res. Corp., 918 F.2d at 1043-44). Although it is true that "'once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business,'" Landoil, 918 F.2d at 1044 (quoting Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 211 (2d Cir. 1970)), "New York courts 'require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state.'" Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983) (quoting Stark Carpet Corp. v. M-Geough Robinson, Inc., 481 F. Supp. 499, 505 (S.D.N.Y.1980) (internal quotation marks and citation omitted)).

Here, Woods's conclusory allegations about his employment activities in New York are insufficient to demonstrate "substantial solicitation" by Pettine in New York. To begin, the Complaint does not allege any business activity that Pettine directed at New York aside from the factually unsupported allegation that Woods sought to procure partnerships on Pettine's behalf with professional sports organizations and labor unions, "the majority of which are based in New York." (Cmplt. (Dkt. No. 1) ¶ 21)  Although Woods baldly states that he and Pettine "have a number of . . . clients [who] are New York residents," and that he and Pettine have "conducted [business] with New York Companies in the New York markets" (see Pltf. Opp. Br. (Dkt. No. 25) at 2), Woods has not specified any New York clients nor has he identified with specificity any New York-related business activity.  Pettine, for his part, has submitted an affidavit stating that "Woods has never referred a patient for treatment at my Colorado medical offices." (Pettine Aff. (Dkt. No. 20) ¶ 24)  Moreover, it is obvious from the First Agreement and the unexecuted Second Agreement that the locus of Woods's services was immaterial to the alleged contracts' primary objective, which was the referral of athletes to Pettine's Colorado-based medical practice. (Dvorkin Decl. (Dkt. Nos. 20), Exs. C & D)

Even if the Court were to accept the unsupported notion that the purpose of the consultant relationship was for Woods to solicit New York-based athletes for Pettine's medical practice, Woods has not alleged facts demonstrating that Pettine engaged in "other activities of substance in the state."  It is undisputed that Pettine is a Colorado resident who operates a Colorado-based medical practice and that any patients Woods solicited on Pettine's behalf were to be seen in Colorado rather than New York.  Woods does not allege – nor can he – that Pettine is licensed to practice medicine in New York, that he owns or rents New York property, that he maintains a New York office or bank account, or that he even travelled to New York during the

relevant time period. While Woods suggests in his opposition brief that Pettine owns a medical device company that derives substantial revenue from New York sales (Pltf. Opp. Br. (Dkt. No. 25) at 5), he provides no factual support for this allegation, despite being afforded the opportunity to conduct jurisdictional discovery.

In arguing that Pettine has conducted "activities of substance" in New York, Woods points to his own alleged, undefined activities soliciting clients on behalf of Pettine. For instance, Plaintiff claims that he maintains a home office in New York "as an employee [of Pettine]," and further contends that OSCI paid him to "maintain a phone listing in New York." (Id. at 5) These allegations do not evince a continuous and systematic course of business in New York by Pettine. But even if they could, Woods has not alleged facts sufficient to support his allegations. The only evidence Woods offers regarding his claim that OSCI paid for his phone listing is a business card in his own name that lists, in addition to a Colorado address and phone number, a phone number with a New York area code. (Woods Decl. (Dkt. No. 25), Ex. 3) Neither the business card nor Woods's conclusory allegations about what it demonstrates provides the Court with a sufficient basis to infer that OSCI paid for the phone listing. Indeed, the business card's Colorado office address undermines, rather than supports, Woods's claim that he maintained a home office in New York on Pettine's behalf.

Finally, Woods's claim that Pettine "engaged in several business transactions with New York[-based companies]" is entirely unsupported. The only document Woods offers to support this claim is a one-page marketing proposal addressed to Woods from a public relations company that is allegedly based in New York. (Pltf. Opp. Br. (Dkt. No. 25) at 5; Woods Decl. (Dkt. No. 25), Ex. 4) There is no evidence that Pettine, OSCI, or Woods ever entered into any kind of business transaction with the public relations company.

In sum, Woods has not proffered sufficient facts to demonstrate that Pettine has engaged in such a continuous and systematic course of business in New York such that general jurisdiction may properly be exercised over him pursuant to CPLR § 301. See, e.g., Landoil, 918 F.2d at 1043 (thirteen business trips to New York by defendants' employees over eighteen-month period insufficient to justify exercise of general jurisdiction over defendants); Hoffritz, 763 F.2d at 57-58 (declining to exercise general jurisdiction where Georgia domiciliary visited New York fifty-four times to discuss Atlanta-based business project with New York plaintiffs); E.I. Dupont, 2013 WL 4647194, at *5 (declining to exercise jurisdiction where defendant corporation sent employees to New York twice a year to make purchases, engaged in $134,000 worth of sales with a New York based company, and forwarded product shipments to New York customers on behalf of a third-party purchaser).

### 2. Specific Jurisdiction

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, Inc., 490 F.3d at 246 (citation omitted). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Licci, 673 F.3d at 61 (citation omitted). "As to § 302(a)(1)'s second requirement, 'a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" HSH Nordbank AG New York Branch v. Street, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (citing Licci, 673 F.3d at 66). "A single act within New York will, in the proper case, satisfy the requirements

of section 302(a)(1)." Licci, 673 F.3d at 62 (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 72 (2006) ("[W]hen the requirements of due process are met, as they are here, a sophisticated institutional trader knowingly entering our state – whether electronically or otherwise – to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute.")).

"In applying the long-arm statute, 'New York courts have cautioned . . . that 'defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact.'" Aquiline Capital Partners LLC v. Finarch LLC, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (alteration in original) (quoting Hutton v. Priddy's Auction Galleries, 275 F.Supp.2d 428, 439 (S.D.N.Y.2003)) (citing McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 383 (1967)).

In determining whether an out-of-state defendant has transacted business in New York within the meaning of CPLR § 302(a)(1), the Second Circuit has directed courts to consider the following factors, among others:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted)). No single factor is dispositive, and a determination about personal

jurisdiction must be based on the totality of the circumstances. Agency Rent A Car, 98 F.3d at 29.

As to the first factor – an "on-going contractual relationship" between the parties – while some courts have found that one contract is not sufficient to establish an ongoing contractual relationship, see Mortgage Funding Corp. v. Boyer Lake Pointe, LC, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005) (finding that even if a contractual relationship between the parties existed, "this one contract did not establish an 'on going contractual relationship'") (citing Burrows Paper Corp. v. R.G. Engineering Inc., 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005) (finding no "ongoing contractual relationship" where contract at issue was only transaction)), this Court will assume for purposes of this motion that the first factor favors Plaintiff.

The second factor – negotiation or execution in New York, and defendant's post-contract visits to New York – favors Pettine. It is undisputed that Pettine did not negotiate or execute either agreement in New York.[3] There is likewise no evidence that Pettine visited New York after the parties entered into the alleged agreements. "'[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant.'" Mortgage Funding Corp., 379 F. Supp. 2d at 287 (quoting Worldwide Futgol Associates, Inc. v. Event Entertainment, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997)) (alteration in Mortgage Funding Corp.); see also Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166-67 (2d Cir. 2005) ("Under New York law, the transacts-business standard can be satisfied where both the negotiations and execution of a contract took place within New York.");

---

[3] It is not even clear that Woods lived in New York when the agreements were negotiated. The Complaint alleges that Woods relocated to New York City – "moving away from home and family" – in alleged detrimental reliance on Pettine's "promises" reflected in the unexecuted Second Agreement. See Cmplt. (Dkt. No. 1) ¶ 56.

13

Wego Chemical & Mineral Corp. v. Magnablend Inc., 945 F. Supp. 2d 377, 383 (E.D.N.Y. 2013) (finding no jurisdiction where Plaintiff did "not allege that any issue was negotiated or any agreement was executed in New York" or that "any representative of [Defendant] ever traveled to New York during the negotiation or formation of the alleged agreement"); Bucephalus Alternative Energy Grp., LLC v. KCR Dev., 08 CIV. 7343, 2009 WL 5179091, at *5 (S.D.N.Y. Dec. 23, 2009) (finding no personal jurisdiction and noting "[n]ot once did the parties meet in New York regarding this contract"); JFP Touring, LLC v. Polk Theatre, Inc., 07 Civ. 3341(CM), 2007 WL 2040585, at *11 (S.D.N.Y. July 12, 2007) ("electronic communications, telephone calls, faxes or letters, in and of themselves, are generally not enough to establish jurisdiction"); Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25, 34 (S.D.N.Y. 1982) ("where, as here, the cause of action arises out of a contract, the New York courts have placed special emphasis on the locale of contract negotiations") (citing cases).

    The choice-of-law factor also favors Defendant. Each of the alleged contracts here contains an unambiguous choice of law provision stating that all disputes arising out of or relating to the agreements will be governed by Colorado law. The Second Circuit has held that "[a] choice of law clause is a significant factor in a personal jurisdiction analysis" because the parties, by including such a clause in their contract, "invoke the benefits and protections" of the designated state's laws. Sunward Electronics, Inc., 362 F.3d at 23.

    The last factor – which addresses whether the contract at issue requires a party to send notices or payments into the forum state or subjects a party to supervision by the other party in the forum state – also favors Defendant. The alleged consultant agreements do not mention New York or require that any services be performed there. There is likewise no evidence that Pettine was supervising whatever activities Woods performed in New York.

14

Although Woods argues that he expended considerable effort in New York on behalf of Pettine, "conduct[ing] most, if not all, of his business in New York with counter-parties that are New York companies and clientele that are residents of this State" (see Pltf. Opp. Br. (Dkt. No. 25) at 2), "Plaintiff's business interactions with New York are not the issue when assessing personal jurisdiction." Mortgage Funding Corp., 379 F. Supp. 2d at 288. Instead, "the Court must evaluate the Defendant's activities and conduct." Id.; see also Zibiz Corp. v. FCN Tech. Solutions, 777 F. Supp. 2d 408, 422-23 (E.D.N.Y. 2011) ("The fact that plaintiff may have expended time, energy and resources in New York in order to fulfill its obligations under the parties' agreements is irrelevant." (citing Mortgage Funding Corp., 379 F. Supp. 2d at 288)); see also PaineWebber Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 119 (S.D.N.Y. 1990) ("[T]he focus of a C.P.L.R. § 302 inquiry is on what defendant [] did in New York in connection with the cause of action."). The issue is whether Pettine projected himself into New York by transacting business here, not whether Woods performed services in New York in order to fulfill his responsibilities under the alleged consultant agreements.

Finally, even if the Court could find a basis for determining that Pettine had transacted business in New York, "there is no articulable nexus or substantial relationship between plaintiff's claims and any actions by defendant in New York." Zibiz Corp., 777 F. Supp. 2d at 423. "'A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" Best Van Lines, 490 F.3d at 246 (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted)). This standard "merely requires the cause of action to 'relate to' defendant's minimum contacts with the

forum." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 167 (2d Cir. 2010) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127-28 (2d Cir. 2002)).

Here, Woods does not allege that the consultant agreements were negotiated or entered into in New York, or that the violation of the alleged consultant agreements occurred in New York. In other words, Woods has not established that his contract and quasi-contract claims relate to Pettine's actions in the forum state. Pettine is a Colorado domiciliary who operates a Colorado-based medical practice. While Woods alleges that Pettine negotiated and entered into two consultant agreements with him, he does not claim that the negotiation or execution of these agreements took place in New York. Indeed, the record demonstrates that the background meetings between Woods and Pettine took place in Indiana, Texas, Washington, D.C., and Colorado. See Cmplt. (Dkt. No. 1) ¶¶ 20, 25, 30; Pettine Aff. (Dkt. No. 20) ¶ 10. It is also apparent that the alleged consultant agreements are not limited to New York or focused on New York. Indeed, the agreements do not mention New York. The mere fact that Woods communicated his demands for payment from New York is not a sufficient basis for asserting jurisdiction over Pettine.

Under the totality of the circumstances, Woods has not pleaded sufficient facts to demonstrate that Pettine has transacted business in New York or that Woods's claims arise out of actions Pettine took in New York.[4]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 19) and to close this case.

---

[4] Because the Court lacks general or specific jurisdiction under New York's long-arm statute, it need not address Pettine's due process arguments. Licci, 673 F.3d at 61.

Dated: New York, New York
       January 24, 2014

                                SO ORDERED.

                                _____
                                Paul G. Gardephe
                                United States District Judge